IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No. 7:16-CV-00311-FL

**Angela Thrasher,**

            Plaintiff,

v.

**Nancy A. Berryhill**, Acting
Commissioner of Social Security,[1]

            Defendant.

**Memorandum & Recommendation**

       Plaintiff Angela Thrasher instituted this action on September 6, 2016, to challenge the denial of her application for social security income. Thrasher claims that the Administrative Law Judge ("ALJ") Peggy McFadden-Elmore erred in (1) evaluating the medical opinion evidence and (2) assessing her credibility. Both Thrasher and Defendant Nancy A. Berryhill, the Acting Commissioner of Social Security, have filed motions seeking a judgment on the pleadings in their favor. D.E. 20, 27.

       After reviewing the parties' arguments, the court has determined that ALJ McFadden-Elmore reached the appropriate decision. There is substantial evidence to support the weight she afforded to the medical opinion evidence. The undersigned also finds that ALJ McFadden-Elmore properly assessed Thrasher's credibility. Therefore, the undersigned magistrate judge

---

[1] Berryhill replaced Carolyn Colvin as the Acting Commissioner of Social Security on January 20, 2017.

recommends that the court deny Thrasher's motion, grant Berryhill's motion, and affirm the Commissioner's decision.[2]

I.  **Background**

On September 13, 2012, Thrasher filed application for disability insurance benefits and supplemental security income. In both applications, she alleged a disability that began on September 9, 2010. After a hearing, the Commissioner denied Thrasher's claims, concluding that she was not disabled. Tr. at 27–38.

Following remand of the matter, on January 28, 2016, Thrasher appeared for a second hearing to determine whether she was entitled to benefits. ALJ McFadden-Elmore determined that Thrasher was not entitled to benefits because she was not disabled. *Id.* at 534–550.

ALJ McFadden-Elmore found that Thrasher had the following severe impairments: degenerative disc disease; fibromyalgia; scoliosis, status post fusion; carpal tunnel syndrome ("CTS"); mood disorder; and generalized anxiety disorder. *Id.* at 537. ALJ McFadden-Elmore found that these impairments, alone or in combination, did not meet or equal a Listing impairment. *Id.* ALJ McFadden-Elmore then determined that Thrasher had the RFC to perform sedentary work with additional limitations. *Id.* at 539. She is permitted to use a cane for ambulation. *Id.* Thrasher can never climb ladders, ropes, or scaffolds and she can never kneel or crawl. *Id.* She can occasionally climb ramps or stairs and she can occasionally balance, stoop, or crouch. *Id.* Thrasher is also limited to only frequent handling or fingering. *Id.* She must avoid concentrated exposure to workplace hazards. *Id.* Finally, Thrasher is limited to unskilled work, which is defined as performing simple, routine, and/or repetitive tasks, and she can have no ongoing interaction with the public. *Id.*

---

[2] The court has referred this matter to the undersigned for entry of a Memorandum and Recommendation. 28 U.S.C. § 636(b).

ALJ McFadden-Elmore concluded that Thrasher was unable to perform her past relevant work as a cashier or a teacher's aide but that, considering her age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that she was capable of performing. *Id.* at 549. These include: document preparer and final assembler. *Id.* at 549–50. Thus, ALJ McFadden-Elmore found that Thrasher was not disabled. *Id.* at 550.

After unsuccessfully seeking review by the Appeals Council, Thrasher commenced this action on September 6, 2016. D.E. 1.

## II. Analysis

### A. Standard for Review of the Acting Commissioner's Final Decision

When a social security claimant appeals a final decision of the Commissioner, the district court's review is limited to the determination of whether, based on the entire administrative record, there is substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). If the Commissioner's decision is supported by such evidence, it must be affirmed. *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

### B. Standard for Evaluating Disability

In making a disability determination, the ALJ engages in a five-step evaluation process. 20 C.F.R. § 404.1520; *see Johnson v. Barnhart*, 434 F.3d 650 (4th Cir. 2005). The analysis requires the ALJ to consider the following enumerated factors sequentially. At step one, if the claimant is currently engaged in substantial gainful activity, the claim is denied. At step two, the claim is denied if the claimant does not have a severe impairment or combination of impairments

significantly limiting him or her from performing basic work activities. At step three, the claimant's impairment is compared to those in the Listing of Impairments. *See* 20 C.F.R. Part 404, Subpart P, App. 1. If the impairment is listed in the Listing of Impairments or if it is equivalent to a listed impairment, disability is conclusively presumed. However, if the claimant's impairment does not meet or equal a listed impairment, the ALJ assesses the claimant's RFC to determine, at step four, whether he can perform his past work despite his impairments. If the claimant cannot perform past relevant work, the analysis moves on to step five: establishing whether the claimant, based on his age, work experience, and RFC can perform other substantial gainful work. The burden of proof is on the claimant for the first four steps of this inquiry, but shifts to the Commissioner at the fifth step. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

### C. Medical Background

Thrasher has a history of scoliosis for which she underwent surgery in 1987. Tr. at 495. In addition to her back condition, the medical evidence also includes records relating to her lower extremity impairment, carpal tunnel syndrome, and mental health. In 2010, Thrasher sought treatment from her primary care physician for cervical spine pain and migraine headaches. *Id*. at 464.

Dr. Dale Caughey performed a consultative examination in March 2011. *Id*. at 311–14. Noting her posture and gait were "slow and stiff," Dr. Caughey assessed "extreme kyphoscoliosis postop with debility and . . . degenerative disc disease at L1–L2." *Id*. at 313. He opined that she was unable to work. *Id*.

Later that month, Dr. Brenda Harris performed a consultative psychiatric examination. *Id*. at 317–20. Thrasher stated that she was taking online classes in education and could perform household chores when her pain was not severe. *Id*. at 318. Dr. Harris remarked that Thrasher's

pain impeded her ability to function well on a regular basis and that her physical symptoms limited any improvement in her activity level. *Id*. at 319. She opined that Thrasher's anxiety would present moderate impairment in her abilities to interact with others, accept instructions, maintain regular attendance, complete a normal workday or workweek, and deal with workplace stress. *Id*. at 320.

In December 2011, Thrasher sought treatment sat Family Works Psychological Center for her anxiety and irritability. *Id*. at 513–15. She attended follow up appointments in January and February. *Id*. at 509–512.

Thrasher also sought treatment at OrthoWilmington. In February 2012, Dr. Mark Rodger evaluated Thrasher. *Id*. at 497–99. He noted her history of back pain radiating into her lower extremities with numbness and tingling. *Id*. at 497. He also remarked that she had no significant weakness or myelopathy symptoms. *Id*. These notes also indicate that Thrasher used chiropractic treatment and therapy exercises. *Id*. Dr. Rodger observed that she had degenerative disc disease without significant evidence of major nerve or cord compression. *Id*. at 498. Although surgery was not indicated at that time, Dr. Rodger opined it may be indicated in the future. *Id*. at 498–99.

The following month, Thrasher began treatment with Dr. Francis Pecoraro, a pain management specialist. *Id*. at 495. Dr. Pecoraro's assessment was lumbar scoliosis, degenerative disc disease and intermittent bilateral lower limb neuropathic pain. *Id*. at 496. He prescribed Thrasher methadone and hydromorphone to stabilize her pain. *Id*.

In April 2012, Thrasher visited the Emergency Department for lower extremity swelling. *Id*. at 453. A follow-up visit to her primary care provider revealed swollen feet with edema and multiple open wounds. *Id*. at 486. Later that month, Dr. Pecoraro noted Thrasher's lower extremity edema which was causing her pain in her right hip. *Id*. at 494. Thrasher also sought

treatment at Family Works at that time, reporting mood swings following a recent car accident. *Id*. at 305. She continued treatment at Family Works throughout 2012 for her mood swings, irritability, and outbursts. *Id*. at 501–04, 516–17.

Thrasher returned to OrthoWilmington in May 2012 complaining of lower back pain radiating into her lower extremities. *Id*. at 493. Her lower extremity swelling had resolved. *Id*. Dr. Pecoraro noted that he would order testing if her left arm pain and paresthesias did not resolve. *Id*. In August, Dr. Pecoraro opined that Thrasher was limited to occasionally lifting five pounds, with no frequent lifting, she could sit or stand for 15 minutes at one time, and she could occasionally bend. *Id*. He concluded that she should not work. *Id*.

In November 2012, Thrasher returned to Dr. Pecoraro for pain management follow-up care. *Id*. at 920–22. She next saw Dr. Pecoraro three months later for back and neck pain as well as numbness. *Id*. at 917. Treatment records note that Thrasher rated her pain as eight out of ten and she used a cane to ambulate. *Id*. at 917–18.

In February 2013, Thrasher saw Deb Kalnen, LPA, at Family Works for her anger issues. *Id*. at 954. The following month, Thrasher visited Family Works on three occasions. Kalnen noted that she suffered from both a mood disorder and generalized anxiety and assigned a Global Assessment of Functioning ("GAF") score of 45. *Id*. at 888. She continued to see her therapist for mood swings in May and December and again the following June. *Id*. at 932, 939–40, 987–89.

Thrasher visited her primary care provider in February complaining of swollen hands and feet as well as numbness. *Id*. at 891. Following a fall in April 2013, Thrasher visited the Emergency Department for pain in her ribs, low back, hip, and knee. *Id*. at 875. Imaging studies showed a compression fracture at L2, *id*. at 787, for which she received follow-up care from

Stephen Free, PA-C, at OrthoWilmington. *Id*. at 915–16. One month later, Thrasher saw Dr. Pecoraro reporting that her pain rated as seven out of ten. *Id*. at 913–14. Thrasher also sought treatment at Atlantic Coast Chiropractic for her back pain in September and again in November. *Id.* at 902–04.

In January 2014, Thrasher returned to OrthoWilmington for her continued back and neck pain. *Id*. at 910–12, 1074–76. Jill McCulley, PA-C, believed that Thrasher's pain stemmed from arthritis in her low back and possibly her SI joint. *Id*. at 911. Thrasher declined injections due to her lack of insurance. *Id*. Thrasher next saw McCulley three months later reporting back pain as well as leg pain with tingling. *Id*. at 967–73. Thrasher also complained of hand numbness and tingling and she walked with a cane. *Id*. at 968–69. Lumbar spine x-rays revealed degenerative disc disease at L1–2 and L2–3 as well as scoliosis. *Id*. at 971. McCulley noted that imaging studies failed to explain her left lower extremity symptoms and she recommended a electromyogram and nerve conduction study ("NCS") of the lower extremities. *Id*. at 969.

The following month, Thrasher retuned to Dr. Pecoraro for an electromyogram NCS of her upper extremities based on her complaints of neck pain with numbness and tingling in her arms. *Id*. at 976–78. Dr. Pecoraro assessed moderate CTS on the left and median sensory neuropathy on the right. *Id*. at 976–77. One month later, Thrasher underwent another electromyogram and NCS on her left leg because of the pain and numbness she experienced. *Id*. at 978–79. Dr. Pecoraro assessed left tibial motor axonopathy and left medial and lateral sensory neuropathy. *Id*. at 980. Thrasher followed-up with McCulley in July 2014. *Id.* at 1017–19.

Around this time, therapist Kalnen completed a form setting forth Thrasher's mental limitations. *Id*. at 992. She opined that Thrasher had marked restrictions in activities of daily living and extreme difficulties in her abilities to maintain social functioning, work with others,

7

and interact appropriately with the general public. *Id*. Thrasher sought follow-up care at Family Works in May 2015. *Id.* at 1024–26.

Thrasher returned to OrthoWilmington three months later reporting low back pain extending into her left foot. *Id*. at 1014. Thrasher stated that she had difficulty getting comfortable and constantly moved around to avoid becoming stiff. *Id*. She also reported that she tried to walk and exercise. *Id*. She returned to OrthoWilmington two months later and again reported back pain radiating into her lower left extremity. *Id*. at 1010–13. Although Thrasher requested to have a handicap placard and a disability form completed, McCulley declined the request, noting that she believed Thrasher had only moderate pain and was capable of light work. *Id*. at 1060.

Thrasher next visited Atlantic Chiropractic in January 2015 reporting frequent low and mid back pain. *Id*. at 997. One month later, she saw Dr. Richard Bahner at OrthoWilmington for bilateral hand and wrist pain. *Id*. at 1006–09. She returned to OrthoWilmington on two occasions in April, where she saw McCulley for her pain and Dr. Bahner for her CTS. *Id*. at 1000–05.

Thrasher visited OrthoWilmington twice in June. *Id*. at 1030–38. Thrasher reported to McCulley that she had low back pain radiating into her left foot and increased hip pain in her left hip when she walked or sat for prolonged periods. *Id*. at 1035. Thrasher rated her pain level as an eight out of ten. *Id.* Thrasher also saw Erica Reali, PA-C, for a pre-surgical appointment ahead of her CTS release surgery. *Id*. at 1030–38. Dr. Bahner performed an open carpal tunnel release on Thrasher's left side the following month. *Id.* at 1029. Thrasher attended a post-operative, follow-up appointments with Reali later that month and again in October. *Id*. at 1073, 1067–69.

Dr. Ayman Gebrail conducted a consultative examination in August 2015. *Id*. at 1034–47. He opined that Thrasher's low back pain would make it difficult for her to engage in laborious activities, stand for long periods of time, and walk. *Id*. at 1045.

The following month, Thrasher returned to OrthoWilmington to continue her pain management. *Id.* at 1070–72. McCulley noted diffuse tenderness in the paraspinal region and remarked that Thrasher used a cane. *Id*. at 1070. Thrasher rated her pain level as a seven out of ten. *Id.* One month later, x-rays of Thrasher's cervical spine showed moderate degenerative disc disease at C4 through C7. *Id*. at 1048. Thoracic studies indicated scoliosis with multilevel degenerative changes. *Id*. at 1049. Additionally, lumbar imaging showed moderate to severe levosciolosis with multi-level degenerative changes. *Id*.

Thrasher next visited Atlantic Chiropractic in November 2015 for her back pain, which she stated occurred up to 75% of the day. *Id*. at 1057–58. The following month, Thrasher again saw McCulley for pain management. *Id*. at 1063–66. McCulley noted again that Thrasher used a cane. *Id*. at 1064. She recommended Thrasher undergo lumbar facet blocks with possible future radiofrequency thermocoagulation, depending on the success of the fact blocks. *Id*. at 1064.

### D. Medical Opinion Evidence

Thrasher first argues that ALJ McFadden-Elmore erred in weighing the medical opinion of Drs. Pecoraro and Caughey. The Commissioner posits that the opinion evidence was properly considered. The court finds that Thrasher has not established error by ALJ McFadden-Elmore in her evaluation of these medical opinions.

Regardless of the source, the ALJ must evaluate every medical opinion received. 20 C.F.R. § 404.1527(c). While an ALJ is under no obligation to accept any medical opinion, *see Wireman v. Barnhart*, No. 2:05-CV-46, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006), he

9

must nevertheless explain the weight accorded such opinions. *See* SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996); SSR 96-6p, 1996 WL 374180, at *1 (July 2, 1996). When evaluating medical opinions, the ALJ should consider "(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson*, 434 F.3d at 654. An ALJ's determination as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up "specious inconsistencies," *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992), or has failed to give a sufficient reason for the weight afforded a particular opinion, *see* 20 C.F.R. § 404.1527(c). Generally, the more the medical source presents relevant evidence to support his opinion, and the better that he explains it, the more weight his opinion is given. *See id*. § 404.1527(c)(3). Additionally, the more consistent the opinion is with the record as a whole, the more weight the ALJ will give to it. *See id*. § 404.1527(c)(4).

According to 20 C.F.R. § 404.1527(c)(2), a treating source's opinion on issues of the nature and severity of the impairments will be given controlling weight when well supported by medically acceptable clinical and laboratory diagnostic techniques and when the opinion is consistent with the other substantial evidence in the record. Conversely, however, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001); *see also Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996) (finding that "if a physician's opinion in not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight"). A medical expert's opinion as to whether one is disabled is not

dispositive; opinions as to disability are reserved for the ALJ and for the ALJ alone. *See* 20 C.F.R. § 404.1527(d)(1).

### a. Dr. Pecoraro

Thrasher points to her long history of back pain to support her claim that ALJ Elmore-McFadden erred in giving little weight to the assessment of Dr. Pecoraro, her treating physician. She maintains that the evidence supports Dr. Pecoraro's findings that she could not work and that she could sit and stand only 15 minutes at a time, could only occasionally lift five pounds, and could not bend. ALJ Elmore-McFadden gave little weight to Dr. Pecoraro's opinions, as they appeared to be based on Thrasher's subjective statements and assessed limitations more-restrictive than the objective findings established. Tr. at 546.

ALJ Elmore-McFadden noted that Dr. Pecoraro's records reflected normal and stable gait, no edema or clubbing, and negative straight leg raises in May 2012. *Id*. Two months later, Thrasher reported less intense pain and her swelling had resolved. *Id*. In November 2012, she stated that her pain was stable with medications. *Id*. At this time, she exhibited reduced lumbar range of motion but full strength, negative straight leg raises, and normal gait. *Id*. at 546–47. and Dr. Pecoraro noted she was doing well with a minimal amount of medication. *Id*. ALJ Elmore-McFadden also concluded that Dr. Pecoraro's opinion was inconsistent with both a February 2012 imaging study which revealed no significant evidence of major nerve or cord compression, and an April 2014 MRI showing no nerve root impingement or stenosis. *Id*. at 547.

Thrasher maintains that Dr. Pecoraro's assessment deserves greater weight because he was her treating physician. She further contends that ALJ Elmore-McFadden failed to consider an April 2014 MRI which showed nerve conditions in her left lower extremity.

Despite her arguments, the undersigned cannot find that ALJ Elmore-McFadden erred in considering Dr. Pecoraro's opinion. As the Commissioner point out, ALJ Elmore-McFadden thoroughly examined the medical evidence documenting Thrasher's impairments. Although Dr. Pecoraro is a treating source, his opinions were not given controlling weight given the presence of persuasive contrary evidence, including exam findings, diagnostic studies, and Dr. Pecoraro's own treatment records. Although she cited an April 2014 MRI to support her claim of lower left extremity impairment, by October 2014, this condition improved, as Thrasher reported her leg swelling had eased and she was walking and doing other exercising. Significantly, as noted above, McCulley, another provider with Dr. Pecoraro's practice, declined Thrasher's request for a disability placard because her symptoms were only moderate. Moreover, in December 2014, McCulley concluded that Thrasher was capable of full-time, sedentary work, with some restrictions in sitting, standing, lifting, bending, and handling. ALJ Elmore-McFadden gave this opinion great weight. *Id.* at 547.

Although Dr. Pecoraro has a treating relationship with Thrasher, given that his opinions were inconsistent with other substantial evidence, ALJ Elmore-McFadden properly declined to afford his findings more weight. As there is no error in her consideration of this opinion evidence, the court should affirm her findings on this matter.

      **b.**    **Dr. Caughey**

ALJ Elmore-McFadden gave little weight to Dr. Caughey's assessment that Thrasher was unable to work and that she has moderate difficulty sitting, standing, moving, lifting, carrying, and handling objects. *Id.* at 545–46. ALJ Elmore-McFadden noted that Dr. Caughey did not identify parameters of time or weight in his limitations. *Id.* at 546. She also found that his opinion was inconsistent with his generally benign exam findings. *Id.* For instance, Dr. Caughey

noted that Thrasher displayed full range of motion in all her extremities and full grip strength. *Id*. Dr. Caughey also observed that Thrasher could squat and rise, tandem walk, and get on and off of the exam table without assistance. *Id*. While she had a slow and stiff gait, Thrasher did not require an assistive device to ambulate. *Id*.

Thrasher argues that ALJ Elmore-McFadden erred in considering Dr. Caughey's opinion, which, she maintains, is consistent with the assessments of Drs. Pecoraro and Rodger. She also contends that Dr. Caughey's finding that Thrasher would have moderate difficulty sitting precludes sedentary work, which generally requires sitting for six hours in an eight-hour workday. She maintains his restrictions find further support in her treatment history which includes surgery at 14, ongoing disc degeneration, nerve conditions, and pain.

A review of the evidence demonstrates that ALJ Elmore-McFadden committed no error in evaluating Dr. Caughey's opinion. Dr. Caughey was a one-time examiner who performed a consultative examination in 2011. Dr. Caughey's findings offer only partial insight into Thrasher's condition because he did not have the benefit of subsequent treatment records, spanning almost five years, documenting Thrasher's condition. Since the time of his evaluation, the evidence demonstrates that Thrasher's pain and functioning improved with medications. Accordingly, Dr. Caughey's assessed restrictions fail to adequately reflect Thrasher's more-recent functioning. Consequently, their bearing on ALJ Elmore-McFadden's analysis is limited.

As Thrasher has only show disagreement, not error, with ALJ Elmore-McFadden's consideration of the medical opinion evidence, her argument on this issue lacks merit. *See Johnson*, 434 F.3d at 653 (reviewing court should not undertake to reweigh conflicting evidence,

make credibility determinations, or substitute its judgment for that of the ALJ). Thus, Thrasher's argument on this issue should be rejected.[3]

### E. Credibility

Thrasher next contends that ALJ McFadden-Elmore erred in failing to fully credit her allegations of pain and its limiting effects on her functional abilities. The Commissioner asserts, and the court concludes, that ALJ McFadden-Elmore's credibility analysis was proper.

There is a two-step process to determine whether a claimant is disabled by pain: (1) the ALJ must determine whether the claimant has a medical impairment "which could reasonably be expected to produce the pain or other symptoms alleged;" (2) if so, the ALJ must evaluate the intensity and persistence of the claimant's pain or symptoms and the extent to which it affects the claimant's ability to work. 20 C.F.R. §§ 416.929(c)(2). In evaluating the second prong, the ALJ cannot require objective evidence of the pain itself. *Craig,* 76 F.3d at 592–93. However, objective medical evidence is a useful indicator in making reasonable conclusions about the intensity and persistence of the claimant's pain. SSR 96-7p, 1996 WL 374186, at *6.[4] Moreover, the ALJ must consider it in evaluating the individual's statements. *Id.*

---

[3] Similarly, Thrasher's argument that Dr. Rodger's opinion, which found that she is disabled and may require future surgery, deserved more than the little weight to which ALJ Elmore-McFadden accorded it is unpersuasive. Dr. Rodger examined Thrasher on one occasion at which time he noted no weakness nor nerve or cord compression. Thrasher's follow-up visits to his practice, OrthoWilmington, demonstrate she had less pain with medications and generally unremarkable exam findings, including negative straight leg raises, normal gait, and normal strength.

[4] Subsequent to the ALJ's decision, the Social Security Administration superseded SSR 96-7p with SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). The more recent Ruling eliminated the term "credibility" noting that "subjective symptom evaluation is not an examination of an individual's character[]" and directed that the determination "contain specific reasons for the weight given to the individual's symptoms[.]" *Id*. Because SSR 96-7p was in effect at the time the ALJ's decision, the undersigned will review the decision under SSR 96-7p. *See Keefer v. Colvin*, C/A No. 1:15-4738-SVH2016 WL 5539516, at *11 n.5 (D.S.C. Sept. 30, 2016).

The following is a nonexhaustive list of relevant factors the ALJ should consider in evaluating a claimant's symptoms, including pain: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; (5) treatment, other than medication, received to relieve the symptoms; and (6) any measures the claimant has used to relieve the symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). A claimant's subjective statements of pain alone are insufficient to establish disability. *Mickles* v. *Shalala*, 29 F.3d 918, 919 (4th Cir. 1994).

The ALJ has full discretion to weigh the subjective statements with the objective medical evidence and other matters of record. *Craig*, 76 F.3d at 595 (holding that claimant's allegations of pain need not be accepted to extent that they are inconsistent with the record); *see also Hawley* v. *Colvin*, No. 5:12-cv-260-FL, 2013 WL 6184954, at *15 (E.D.N.C. Nov. 14, 2013) (ALJ need not accept claimant's claims at face value). In a district court's review, the ALJ's findings are entitled to great weight because of the ALJ's ability to observe and evaluate testimony firsthand. *Shively*, 739 F.2d at 989–90.

Here, ALJ Elmore-McFadden noted the lack of objective evidence to support Thrasher's statements. She remarked that Thrasher used a cane but it was not medically prescribed. ALJ Elmore-McFadden also pointed out that inconsistencies in Thrasher's testimony rendered her statements unreliable.

Thrasher argues that ALJ Elmore-McFadden mischaracterized her testimony. For instance, Thrasher stated that she went shopping but that her husband did the large grocery shopping. Tr. at 565, 573. On some days she gets up at 6:00 a.m. but, on bad days, she cannot get out of bed and her husband gets her son ready for school. *Id*. at 565, 568.

However, the evidence demonstrated that Thrasher's functioning was not as limited as she alleged. For instance, she was able to perform household chores, such as cooking, cleaning, and doing laundry, care for her children, and shop. During this period, she also pursued a graduate degree and managed financial matters. Thrasher's statements as to her degree of limitation are inconsistent with the medical evidence. Treatment records reflect her reports of improvement in symptoms, generally normal or minimal exam findings, and conservative treatment modalities. Although several limitations lacked full support in the record, ALJ Elmore-McFadden nonetheless credited them and incorporated them into Thrasher's RFC. *Id*. at 545, 547 (attention and concentration, social functioning), 548 (use of a cane). In sum, the evidence contradicts a conclusion, from medical providers or from Thrasher's own testimony, that she is disabled. While objective evidence of pain is not necessary, "subjective evidence alone cannot take precedence over objective evidence or lack thereof." *Craig*, 76 F.3d at 592 (quoting *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986)); 20 C.F.R. §§ 404.1592(a), 416.929(a).

Thrasher also argues that ALJ Elmore-McFadden failed to explain why her pain resulted in limitations in bending, kneeling, and standing but not in sitting or walking. She maintains that the record supports a conclusion that she has additional restrictions in sitting, walking, and lifting that were omitted from the RFC determination.

ALJ Elmore-McFadden did not find that Thrasher's statements were fully credible and declined to adopt all of her limitations. She also did not fully endorse the medical opinion evidence setting for restriction in these areas. The RFC limits Thrasher to only occasionally carrying or lifting up to ten pounds, with frequent carrying or lifting of lesser weights. ALJ Elmore-McFadden specifically noted that she considered a limitation in the amount Thrasher

could lift or carry but that there was no evidence demonstrating that she was incapable of performing this activity within the demands of the RFC determination. Tr. at 543.

With respect to sitting and walking, ALJ Elmore-McFadden gave little weight to the medical opinions finding she had limitations in these areas. In doing so, she noted that the evidence showed Thrasher's pain was stable with medication, her lower extremity swelling had resolved, she had full strength, full range of motion in her extremities, negative straight leg raises and, on occasion, she did not use an assistive device and displayed normal gait. *Id.* at 546–47. Testing failed to yield evidence of nerve or cord compression. Providers also remarked that Thrasher was "doing well" with minimal medication and declined her request for a disability placard, finding that she had only moderate symptoms. This evidence supports ALJ Elmore-McFadden's finding that Thrasher was capable of sitting and walking within the demands of work at the sedentary exertional level.

Finding no error in ALJ Elmore-McFadden's assessment of Thrasher's credibility, her argument on this issue lacks merit.

### III. Conclusion

For the forgoing reasons, the court recommends that the court deny Thrasher's Motion for Judgment on the Pleadings (D.E. 20), grant Berryhill's Motion for Judgment on the Pleadings (D.E. 27), and affirm the Commissioner's decision.

Furthermore, the court directs that the Clerk of Court serve a copy of this Memorandum and Recommendation on each of the parties or, if represented, their counsel. Each party shall have until 14 days after service of the Memorandum and Recommendation on the party to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a *de novo* determination) of those portions of the

Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Owen v. Collins*, **766 F.2d 841, 846-47 (4th Cir. 1985).**

Dated: August 8, 2017

_____
ROBERT T. NUMBERS, II
UNITED STATES MAGISTRATE JUDGE