IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:16-CV-311-FL

| | | |
|---|---|---|
| ANGELA THRASHER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings. (DE 20, 27). Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), United States Magistrate Judge Robert T. Numbers, II, entered memorandum and recommendation ("M&R"), wherein it is recommended that the court deny plaintiff's motion, grant defendant's motion, and affirm defendant's decision. Plaintiff timely filed objections to the M&R, and the issues raised are ripe for ruling. For the reasons that follow, the court rejects the M&R, grants plaintiff's motion, denies defendant's motion, and remands for further proceedings.

## BACKGROUND

Plaintiff applied for disability benefits on September 13, 2010, alleging disability beginning September 9, 2010. This application was denied initially and upon reconsideration. A hearing was held on August 14, 2012, before an Administrative Law Judge ("ALJ") who determined that plaintiff was not disabled in a decision dated August 28, 2012. After the appeals council denied plaintiff's request for review, plaintiff commenced an action in this court, docketed as prior related case Thrasher v. Colvin, 7:13-CV-245-FL (E.D.N.C.). In order entered March 27, 2015, this court

remanded to defendant for reassessment of plaintiff's allegations regarding pain and for further explanation regarding the weight given to plaintiff's treating and examining physicians. See id., 2015 WL 1431702, at *2-6 (E.D.N.C. Mar. 27, 2015).

The Appeals Council then directed a new ALJ to offer new hearing and address new evidence and claims submitted since the date of last decision. Following hearing before the ALJ on January 28, 2016, the ALJ determined that plaintiff was not disabled in a decision dated March 9, 2016. After the Appeals Council denied plaintiff's request for further review, plaintiff commenced the instant action on September 6, 2016.

**COURT'S DISCUSSION**

A.   Standard of Review

The court has jurisdiction under 42 U.S.C. § 405(g) to review defendant's final decision denying benefits. The court must uphold the factual findings of the ALJ "if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotations omitted). The standard is met by "more than a mere scintilla of evidence but . . . less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). In reviewing for substantial evidence, the court is not to "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for defendant's. Craig, 76 F.3d at 589.

"A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling," including "a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Radford v.

Colvin, 734 F.3d 288, 295 (4th Cir. 2013). An ALJ's decision must "include a narrative discussion describing how the evidence supports each conclusion," Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (quoting Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015)), and an ALJ "must build an accurate and logical bridge from the evidence to his conclusion." Id. (quoting Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000)).

To assist it in its review of defendant's denial of benefits, the court may "designate a magistrate judge to conduct hearings . . . and to submit . . . proposed findings of fact and recommendations for the disposition [of the motions for judgment on the pleadings]." See 28 U.S.C. § 636(b)(1)(B). The parties may object to the magistrate judge's findings and recommendations, and the court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id. § 636(b)(1). The court does not perform a de novo review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir.1982). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir.1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

The ALJ's determination of eligibility for Social Security benefits involves a five-step sequential evaluation process, which asks whether:

> (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a medical impairment (or combination of impairments) that are severe; (3) the

claimant's medical impairment meets or exceeds the severity of one of the impairments listed in [the regulations]; (4) the claimant can perform [his or her] past relevant work; and (5) the claimant can perform other specified types of work.

Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). The burden of proof is on the claimant during the first four steps of the inquiry, but shifts to the Commissioner at the fifth step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

In the instant matter, the ALJ performed the sequential evaluation. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since September 9, 2010. At step two, the ALJ found that plaintiff had the following severe impairments: degenerative disc disease; fibromyalgia; scoliosis, status post fusion; carpal tunnel syndrome; mood disorder; and generalized anxiety disorder. However, at step three, the ALJ further determined that these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listings in the regulations.

Before proceeding to step four, the ALJ determined that during the relevant time period plaintiff had the residual functional capacity ("RFC") to perform sedentary work, with the following limitations:

> [Plaintiff] is capable of lifting and/or carrying 10 pounds occasionally and less than 10 pounds frequently. She is capable of standing and/or walking at least 2 hours in an 8-hour workday and sitting about 6 hours in an 8-hour workday. She is allowed the assistive use of a cane for ambulation. She can never climb ladders, ropes or scaffolds; kneel; or crawl. She can occasionally climb ramps and/or stairs, balance, stoop and crouch. She is limited to frequently handling and fingering bilaterally. The claimant must avoid concentrated exposure to workplace hazards. She is limited to unskilled work, defined as performing simple, routine and/or repetitive tasks, and she can have no ongoing interaction with the public.

(Tr. 539). In making this assessment, the ALJ found plaintiff's statements about her limitations not fully credible. At step four, the ALJ concluded plaintiff is unable to perform past relevant work.

At step five, the ALJ determined that there are jobs that exist in significant numbers in the national economy that plaintiff can perform. Thus, the ALJ concluded that plaintiff is not disabled under the terms of the Social Security Act.

B.  Analysis

In her objections, plaintiff argues that the ALJ erred in failing to accord substantial or controlling weight to the opinion of her treating physician, Francis S. Pecoraro, M.D. Upon de novo review of plaintiff's argument, the court rejects the analysis in the M&R on the issues presented,[1] and remands for further proceedings.

Regardless of the source, the ALJ must evaluate every medical opinion received. 20 C.F.R. §§ 404.1527(c); 416.927(c). In general, the ALJ should give more weight to the opinion of an examining medical source than to the opinion of a non-examining source. Id. §§ 404.1527(c)(1), 416.927(c)(1). Additionally, more weight is generally given to opinions of treating sources, who usually are most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability, than non-treating sources, such as consultative examiners. Id. §§ 404.1527(c)(2), 416.927(c)(2). Though the opinion of a treating physician is generally entitled to "great weight," the ALJ is not required to give it "controlling weight." Craig, 76 F.3d at 590. In fact, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Id.; see Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001)

---

[1] The magistrate judge addressed additional arguments raised by plaintiff in her memorandum in support of motion for judgment on the pleadings, concerning the ALJ's assessment of opinion of Dr. Dale Caughey, as well as the ALJ's assessment of plaintiff's credibility, which arguments plaintiff does not repeat in her objections. In light of the court's determination in the text above, where additional proceedings on remand may impact assessment of plaintiff's credibility and opinions of other physicians, the court does not adopt the M&R's analysis as to those issues, but rather leaves those issues for assessment by defendant in conjunction with all the evidence in the record, including the opinion of Dr. Pecoraro.

(explaining "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence").

On August 8, 2012, Dr. Pecoraro completed a form "Medical Statement for Social Security Disability Claim," which noted diagnoses of scoliosis post-fusion and thoraco lumbar degenerative disc disease. (Tr. 519; 1080). In a section of the form requiring him to circle answers, Dr. Pecoraro opined that plaintiff has the following limitations and abilities:

1. Hours patient can work per day: None
2. Standing at one time: 15 minutes
3. Sitting at one time: 15 minutes
4. Lifting on an occasional basis: 5 pounds
5. Lifting on a frequent basis: None
6. Bend: Occasionally
7. Manipulation right Hand: Constantly
8. Manipulation left Hand: Constantly
9. Need to elevate legs during 8-hour workday: . . . Totally disabled

(Id.). In addition, Dr. Pecoraro opined that plaintiff suffers from moderate to severe pain. (Id.). On May 10, 2016, Dr. Pecoraro checked a box on a form stating "My opinion of August 8, 2012 continues to accurately reflect, to a reasonable degree of medical certainty, [plaintiff's] current residual functional capacity." (Tr. 1079) (emphasis in original).

In giving the opinion of Dr. Pecoraro "little weight," the ALJ explained as follows:

> I have considered Dr. Pecoraro's August 2012 opinion that the claimant was totally disabled and could not work any hours per day, stand only 15 minutes at one time, sit only 15 minutes at one time, lift 5 pounds occasionally and no weight frequently, and occasionally bend. He noted that the claimant had moderate to severe pain relating to her scoliosis, status post fusion and severe degenerative disc disease. (Exhibit 14F). However, Dr. Pecoraro's opinions appear to be based primarily on the claimant's subjective complaints, as they appear overly restrictive compared to the objective findings of record. In reviewing his clinical findings, treatment notes from the examination in March 2012 document a normal tandem and stable gait with no edema, cyanosis or clubbing and negative straight leg raise tests. In May 2012, the claimant reported that her pain was not as intense. Her extremity swelling had also resolved after stopping methadone. (Exhibit 12F). Additionally, in his November 2012 treatment notes, Dr. Pecoraro noted the claimant reported her pain was stable with medications. The claimant exhibited some reduced lumbar spine range of motion but otherwise exhibited full strength, negative straight leg raise tests, and a

> normal gait. Dr. Pecoraro noted the claimant was doing well with a minimal amount of medication. (Exhibit 20F). Furthermore, Dr. Pecoraro's opinion is not consistent with an imaging study from February 2012, which revealed no significant evidence of major nerve compression or cord compression, nor is it consistent with the claimant's unremarkable April 2014 lumbar MRI, which revealed no nerve root impingement or stenosis. (Exhibit 12F). As such, Dr. Pecoraro's opinion has been given little weight.

(Tr. 546 - 547).

Plaintiff argues that the ALJ's explanation for discounting Dr. Pecoraro's opinion is insufficient because it not take into account 1) a nerve conduction study in May 2014 with interpretation of left tibial motor axonopathy and left medial and lateral sensory neuropathy, and 2) other medical records supporting Dr. Pecoraro's opinion. The court addresses each in turn:

1. May 2014 nerve conduction study

In discounting the opinion of Dr. Pecoraro, and in discussing the medical evidence of record, the ALJ did not mention a May 2014 report of nerve conduction study interpreted by Dr. Pecoraro, which contained the following observations:

> 1. Left tibial motor axonopathy by virtue of a greater than 50% decrease of the amplitude as compared to the right.
> 2. Left medial and lateral plantar sensory neuropathy by virtue of a significant decrease of the amplitude as compared to the right.

7

(Tr. 980). The ALJ's failure to mention the May 2014 report requires remand, under the circumstances of this case, for several reasons.

First, the May 2014 report includes findings of a "significant" medical nature, (Tr. 980), summarized by Dr. Pecoraro, including diagnoses of axonopathy and neuropathy that are not mentioned by the ALJ. (Tr. 534-550). Second, the objective medical findings and diagnoses are directly probative to plaintiff's ability to sit or stand, because they involve her lower extremities, and her complaints of "[n]umbness and occasional pain in left leg from back down to toes." (Tr. 979-980). Thus, the May 2014 report may be consistent with Dr. Pecoraro's opinion as to the severity of plaintiff's pain and as to plaintiff's functional limitations, particularly those associated with her inability to sit or stand no more than 15 minutes at a time. Third, while the ALJ mentioned an "unremarkable April 2014 MRI, which revealed no nerve root impingement or stenosis," as one basis for giving little weight to Dr. Pecoraro's opinion, the ALJ did not mention the May 2014 report or Dr. Pecoraro's findings thereof. (Tr. 547).

Thus, the May 2014 report is probative evidence that conflicts with the evidence cited by the ALJ to discount the opinion of Dr. Pecoraro. While the "ALJ noted other evidence that is admittedly pertinent to [her] conclusions," she did not address such "conflicting evidence, or explain away [such] contrary findings" in a manner that permits meaningful judicial review. Patterson v. Comm'r of Soc. Sec. Admin., 846 F.3d 656, 662 (4th Cir. 2017); see Gordon v. Schweiker, 725 F.2d 231, 236 (4th Cir. 1984) (noting "[t]he courts face a difficult task in applying the substantial evidence test when the Secretary has not considered all relevant evidence," and "[u]nless the Secretary has analyzed all evidence and has sufficiently explained the weight [she] has given to obviously probative exhibits," meaningful judicial review is not possible).

Defendant suggests that the ALJ's failure to mention the May 2014 report is harmless error because "the medical evidence shows that by October 2014, [plaintiff] reported that the numbness in her left leg eased up and she tried to walk for exercise. (Tr. 1014-16)." (DE 28 at 14). The magistrate judge accepted that argument and suggested also that the May 2014 report is inconsequential because other evidence in the record shows that plaintiff's condition later eased and symptoms were moderate. (DE 29 at 12). This approach misses the mark for two reasons. First, it is a post-hoc rationalization by defendant in place of an explanation by the ALJ as to why the May 2014 report is inconsequential for assessing the weight of Dr. Pecoraro's opinion. "Harmonizing conflicting evidence and bolstering inconclusive findings requires credibility determinations that we cannot make; these exercises fall outside our scope of review." Patterson, 846 F.3d at 662.

Second, the additional evidence cited does not necessarily negate or cancel out the findings made by Dr. Pecoraro in the May 2014 report. For instance, the October 2014 treatment note states:

> [Plaintiff] noticed about a month a half ago that <u>driving causes her legs to go numb at times, especially her left</u>. This has eased up <u>some</u>. She <u>has a hard time getting comfortable with sitting</u>. She <u>has to constantly move around to keep from getting stiff as this increases her pain</u>. She tries to get out and walk for exercise <u>but cannot make it far. . . . Her current pain score is a 6/10</u>.

(Tr. 1014) (emphasis added). The treatment note also provides a diagnosis of "[l]eft lower extremity neuropathy." (Tr. 1015). In light of the diagnosis matching the May 2014 report, as well as the report of symptoms emphasized above, which are more nuanced than suggested by defendant, it is not clear whether the October 2014 treatment note fully negates or cancels the findings by Dr. Pecoraro in the May 2014 study, particularly as it relates to plaintiff's ability to sit for long periods of time. In sum, it is for the Commissioner in the first instance to determine and explain the resolution of the apparent conflict between the May 2014 report and the other evidence in the record.

9

2. Other medical records

Plaintiff cites additional medical records which she contends are consistent with Dr. Pecoraro's opinion, but not adequately addressed by the ALJ. Contrary to plaintiff's suggestion, all of the additional records cited by plaintiff are discussed by the ALJ in her opinion. (See Tr. 541-543; 917 (February 2013 notes); 915 (April 2013); 914 (May 2013); 967-978 (April 2014); 1035-1038 (June 2015); 1063-1066 (December 2015)). Nevertheless, given the ALJ's failure to discuss the May 2014 report, further explanation is warranted where medical records records note symptoms and findings regarding plaintiff's lower extremity pain and numbness. (See, e.g., 1035 ("pain that radiates into her left leg extending into her left foot"); 1010 (same); 1014 (same, with "legs go numb at times, especially in her left"); 967 ("entire left leg went numb and while she is sitting here in the office today her left leg is going numb"); 969 - 970 ("tingling and pain in her left leg"; "positive straight leg raise left"); 915 ("pain is worse with sitting, standing, and walking")).

In sum, although this case presents a limited basis for remand in the overall context of an ALJ decision that provides substantial discussion regarding many pertinent records in evidence, the failure to discuss the May 2014 report is nonetheless a basis that cannot be swept aside as mere harmless error. Therefore, the court must remand again for further proceedings consistent with this order.

**CONCLUSION**

Based on the foregoing, upon careful review of the M&R and the record, the court REJECTS the recommendation in the M&R, GRANTS plaintiff's motion for judgment on the pleadings (DE 20), DENIES defendant's motion for judgment on the pleadings, (DE 27), and REMANDS this

matter to defendant, pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings in accordance with this order. The clerk of court is DIRECTED to close this case.

SO ORDERED this 21st day of September, 2017.

_____
LOUISE W. FLANAGAN
United States District Judge